828 P.2d 321

**Vincent R. WAGGONER, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

No. 18249.

Court of Appeals of Idaho.

Jan. 2, 1991.

Petition for Review Granted Jan. 23, 1991.

Petition for Review Withdrawn Oct. 31, 1991.*

---

\* Published at 121 Idaho 738, 828 P.2d 301.

Vincent R. Waggoner, Boise, pro se.

Jim Jones, Atty. Gen., Robert R. Gates, Deputy Atty. Gen., for respondent.

SWANSTROM, Judge.

Vincent Waggoner, a prisoner who escaped by stealing a state car, was returned to the South Idaho Correctional Institution (SICI) and served with disciplinary offense reports for escape and for theft. Following a disciplinary hearing, Waggoner was sanctioned with detention, loss of good time and restitution. In this appeal, he seeks review of the district court order affirming the magistrate's order which denied his petition for a writ of habeas corpus.

Waggoner's petition alleged that his due process rights were violated by the Department of Correction's failure to provide him timely notice and to grant him a timely disciplinary hearing as provided by the department's policies and procedures manual (manual). The magistrate found that due process had been fully satisfied and that the petition had been frivolously brought, and he awarded costs to the state under I.C. § 12–122. The district court affirmed the magistrate's order. We likewise affirm.

At the evidentiary hearing before the magistrate, Waggoner argued that he had been charged with escape and theft as described in the manual in existence at the time he committed the offenses, i.e., March, 1987.[1] The disciplinary hearing regarding those offenses, however, was conducted in accordance with policy set forth in the manual as amended on June 8, 1987. Waggon-

---

1. Waggoner escaped from SICI on March 10, 1987. He was returned to SICI on September 3, 1987, and was served with the disciplinary re- ports on September 9, 1987. The disciplinary hearing was held on September 15, 1987.

er contends that the amended rules were not applicable in his case. Specifically, Waggoner relied upon a letter, dated September 11, 1987, from the Warden, notifying prisoners and staff that the effective date of the rule changes was September 28, 1987.

The disciplinary hearing officer, who handled the hearing, disputed Waggoner's contentions and stated emphatically that those portions of the manual discussing procedures to be followed in disciplinary hearings went into effect upon approval by the Board and were not at issue in the Warden's letter. The new procedures were implemented during Waggoner's absence from the prison, stated the officer, and they were properly applied in this case. The officer explained that the September 28th date was relevant only to the amended definitions in the offense code under which prisoners could be charged.

The magistrate considered Waggoner's allegations that his due process rights were violated when he received notice of the disciplinary offenses more than twenty-four hours after he became available and when his disciplinary hearing was held beyond the time prescribed in the manual. The magistrate found that the disciplinary hearing was governed by the manual as revised on June 8, 1987.[2] He also found that the necessary documentation in support of the extension of time limits for delivery of notice and for hearing of the disciplinary offense reports was attached to Waggoner's central file. He denied the habeas corpus petition.

■ It is incumbent on us, when we review a decision by a district court made in its appellate capacity, to examine the record of the trial court independently of, but with due regard for, the district court's intermediate appellate decision. *Harney v. Weatherby*, 116 Idaho 904, 906, 781 P.2d 241, 243 (Ct.App.1989). In applying constitutional standards to the facts found, however, we exercise free review. *See Sandpoint Convalescent Services, Inc. v. Idaho Department of Health and Welfare*, 114 Idaho 281, 756 P.2d 398 (1988).

■ Waggoner's contentions concerning the disciplinary proceedings are not unlike those raised in *Sivak v. Ada County*, 115 Idaho 766, 769 P.2d 1138 (Ct.App.1989). In resolving the untimeliness of the disciplinary hearing in *Sivak*, we stated:

> Although a deviation from statutory or regulatory standards does not establish a constitutional violation *per se*, it is a factor to be considered when determining whether a habeas corpus petitioner has suffered a significant deprivation.

*Sivak, supra* at 767, 769 P.2d at 1139, citing *Wilson v. State*, 113 Idaho 563, 567, 746 P.2d 1022, 1026 (Ct.App.1987). *Wilson* dealt with health standards promulgated by the legislature and a claim of cruel and unusual punishment in enforcing these standards in prison. While the case before us is distinguishable in that the rules challenged by Waggoner are derived exclusively from the Board of Correction,[3] the conclusion above stated is nevertheless still valid. More recently, our Supreme Court reiterated that a habeas corpus petition must demonstrate not only that some procedure was unconstitutional, but also that the petitioner was adversely affected or prejudiced by the constitutional violation. *Coleman v. State*, 114 Idaho 901, 762 P.2d 814 (1988).

2. This finding disposes of Waggoner's argument that the language in section 318 of the manual prior to the revision of June 8, 1987, mandated service of the notice of offense within twenty-four hours of the inmate becoming available. As such, he claimed, the mandatory language created a liberty interest mandating due process and, upon a finding of a lack of due process, dismissal of the disciplinary offenses and reversal of the sanctions. The revised section 318, designated 318–C, was rewritten with directory language to allow more flexibility in carrying out policies and procedures at the prison.

For a discussion of the creation of liberty interests by a state's enactment of statutes or regulatory measures, *see Werlinger v. State,* 117 Idaho 47, 785 P.2d 172 (Ct.App.1990).

3. Idaho Code §§ 20–212 and 20–244 empower the State Board of Correction to make and adopt rules and regulations for the efficient management of prison administration and discipline. Further, under I.C. § 67–5201(1), prison administration and disciplinary proceedings are not subject to the Administrative Procedure Act.

■ We do not find that the evidence at the hearing before the magistrate reflects that Waggoner was deprived of due process protections by the timing of his hearing or his notice of the offenses. He was accorded the extent of due process rights to which a prison inmate is entitled in a prison disciplinary proceeding, as set forth in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) and adopted in Idaho in *Calkins v. May*, 97 Idaho 402, 545 P.2d 1008 (1976). The magistrate concluded that Waggoner was given written notice of the charges, an opportunity to call witnesses or present evidence, an inmate representative to assist him in the preparation of briefs, an impartial hearing officer, and a written statement of the basis of the finding by the hearing officer. We conclude that a delay in the service of the hearing date was not proscribed when the reasons for the delay were attached to the notice to Waggoner. We agree with the magistrate and the district court that due process was satisfied, and accordingly, we affirm.

■ Waggoner has contended that the award of fees to the respondent pursuant to I.C. § 12–122 was in error. Although the exact amount of fees had not been specified in a judgment at the time of Waggoner's appeal,[4] he disputes the award of fees, regardless of amount. He also disputes the magistrate's conclusion that the petition was frivolously brought.

The determination as to whether a petition is frivolous rests in the sound discretion of the trial court. *Werlinger v. State, supra,* n. 2. The particular standard against which we measure the court's discretion is found in I.C. § 12–122:

> For purposes of this section, "brought frivolously," shall mean that the petitioner petitioned the court for a writ of habeas corpus based upon claims which either had no basis in fact or, even if the factual allegations were true, they did not, as a matter of law, justify any relief to the petitioner....

The magistrate denied that Waggoner had a liberty interest in the delivery and hearing of the disciplinary offenses by virtue of the manual governing his disciplinary hearing. This request by Waggoner for a declaration of the applicable manual, which the court found to be without merit, seems to have been the basis of his finding that the petition was brought frivolously. Therefore, assuming as did the district court, that the service of the notice and the timing of the hearing were delayed, Waggoner failed to show any adverse impact of the delay or any violation of due process. Contrary to Waggoner's assertions, the record contains sufficient foundation for an award of attorney fees, beyond the mere fact that the petition was denied.

We hold that the award of attorney fees was within the discretion of the magistrate. The entitlement to the award itself, we believe, was affirmed by the district court. Accordingly, we interpret the district court's refusal to review petitioner's arguments on the attorney fee issue to be limited only to the appropriateness of the amount, which admittedly was not before the district court. The district court did find that the appeal, however, was not frivolous; and Waggoner points to this finding as support for his argument that his petition was not frivolous. This argument is not cogent. Because we are not asked to review the amount of the fee award, we decline to do so in this appeal.

The district court's decision upholding the magistrate's orders denying and dismissing the petition for habeas corpus is affirmed, as is the magistrate's award of

**4.** Magistrate Birnbaum, who presided at the hearing in this case, died before entering a final judgment as to the amount of attorney fees awarded to the state. From the record we can ascertain that a cost bill was submitted to the magistrate by the state's representative sometime before September 22, 1988, the date of filing of the "Order Dismissing Appeal" which recites that the state had filed its costs bill for $386.25. The exact date is unknown to us and we are unable to decide whether the time limits with respect to filing memos for costs under Rule 54(d)(5), I.R.C.P., have been complied with. We can only assume that they were in light of Magistrate Naugle's signature on the judgment dated July 18, 1989.

attorney fees to the respondent. No costs or attorney fees awarded on appeal.

WALTERS, C.J., and REINHARDT, J., Pro Tem., concur.